UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NORTHLAND INSURANCE COMPANY,<br>　　　Plaintiff, | ) ) ) ) | |
| v. | ) ) | Civil Action No. 1:13-cv-13192-FDS |
| DOVAL REMODELING, INC., WINTER HILL<br>GENERAL CONTRACTOR, INC., 143 HIGH,<br>LLC, and LUIZ MUNOZ,<br>　　　Defendants. | ) ) ) ) ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**I.　INTRODUCTION**

This insurance coverage case arises out of an underlying personal injury lawsuit.  The

Plaintiff, Northland Insurance Company ("Northland" or Plaintiff"), issued a Commercial

General Liability Insurance Policy to DoVal Remodeling, Inc. ("DoVal").  Luciano DoVal, the

President of DoVal Remodeling, Inc., and various other entities are named defendants in Munoz

v. DoVal et al., Suffolk Superior Court Civ. Action No. 13-03006 ("Munoz Action").  In the

Munoz Action, Luis Munoz ("Mr. Munoz"), alleges that he suffered personal injuries while

performing roofing services during the renovation of the property located at 143 High Street,

Charlestown, Massachusetts ("the project").

Northland filed the instant complaint seeking a declaration from this Court that it has no

duty to defend or indemnify DoVal in connection with the Munoz Action because Mr. Munoz's

"bodily injury" is specifically excluded from the policy.  The policy unambiguously excludes

coverage for a "bodily injury" to "any person who is employed by, is leased to or contracted with

any organization that … contracted with others on your [DoVal] behalf for services."  143 High

1

Street, LLC ("143 High"), the owner of the property, retained DoVal to be the general contractor on the project. DoVal subcontracted with Winter Hill General Contracting, Inc. ("Winter Hill") to perform the roofing work on the project. Winter Hill hired Gugas Home Improvement, Inc. ("Gugas") to provide additional workers to perform the roofing work. Mr. Munoz, the injured party, worked for Gugas as a roofer at the project. Because Mr. Munoz was employed by an organization (Gugas) which contracted with Winter Hill on behalf of DoVal, Mr. Munoz's claim falls squarely within the exclusion.

## II.    STATEMENT OF MATERIAL FACTS[1]

The plaintiff, Northland Insurance ("Northland"), is an insurance company with a principal place of business in Hartford, Connecticut. SOF ¶ 1. The defendant, DoVal Remodeling, Inc. ("DoVal"), is a Massachusetts corporation with a principal office in Malden, Massachusetts. SOF ¶ 2. Luciano DoVal is the President of DoVal. SOF ¶ 4.

DoVal was retained by 143 High to be the general contractor on a construction site located at 143 High Street, Boston, Massachusetts. SOF ¶ 7. The property was owned by 143 High. SOF ¶ 8. As the general contractor, DoVal applied for a building permit and had the responsibility to complete the renovation work in a manner satisfactory to DoVal's client, 143 High. SOF ¶ 9. With regard to subcontractors hired by DoVal, DoVal was responsible for checking their work to make sure everything was done properly and safely. Id.

To complete the project, DoVal hired Winter Hill as its subcontractor to perform the roofing work at the project. SOF ¶ 10. Winter Hill then contracted with Gugas to provide additional laborers to perform the roofing work. SOF ¶ 11. On or about March 22, 2012, Mr. Munoz suffered bodily injuries when he fell off the roof into a dumpster at the project. At the

---

[1] For a complete recitation of the facts not in dispute, Plaintiff respectfully directs the Court's attention to the Statement Undisputed Material Facts of Record (hereinafter "SOF") contained in Plaintiff's Motion.

2

time of the fall, Mr. Munoz was employed by Gugas and was performing roofing work at the project.  SOF ¶ 12.

On August 21, 2013, Mr. Munoz filed a lawsuit in Suffolk Superior Court against 143 High, Luciano DoVal, and Winter Hill, and others, alleging that their negligence caused him to suffer bodily injuries.  SOF ¶ 14.  On December 18, 2013, Northland filed the instant complaint for declaratory judgment, seeking a declaration from this Court that Northland has no duty to defend or indemnify DoVal Remodeling or Mr. DoVal in the underlying Munoz action. SOF ¶ 15.  DoVal was served with the Complaint on February 15, 2014.  SOF ¶ 16.  DoVal has not answered the Complaint or otherwise appeared in this action.  SOF ¶ 17.  On July 8, 2014, Mr. DoVal and DoVal Remodeling were deposed in connection with this action and the underlying Munoz Action.  SOF ¶ 18.

**The Northland Policy**

Northland issued a commercial general liability insurance policy to DoVal, Policy No. WS137474, for the period February 24, 2012 - February 24, 2013 ("the Northland Policy").  SOF ¶ 19.  Pursuant to the Policy's Insuring Agreement (as modified by Endorsement S94-CG (10/08)), Northland agreed that:

> We [Northland] will pay those sums that the insured [DoVal] becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply…

Commercial General Liability Coverage form, CG00 01 12 07 (2006), p.1 at Section I (1)(a). SOF ¶ 20.

Munoz worked for Gugas, a company that contracted with Winter Hill (DoVal's roofing subcontractor) to provide roofing services to DoVal.  SOF ¶ 13.  An endorsement on the

Northland Policy clearly and specifically excludes claims by any person who is employed by any organization that contracted with others on DoVal's behalf for services. SOF ¶ 22. The key endorsement is S94-CG (10/08), **Exclusion – Injury to Employees, Workers or Contracted Persons of Insured Or Contracted Organizations**. The endorsement provides as follows:

> **Bodily Injury to Employees, Workers or Contracted Persons of Insureds or Contracted Organizations**
>
> This insurance does not apply to 'bodily injury' to:
>
> **(3)** Any person who is employed by, is leased to or contracted with any organization that:
>
> > **(a)** Contracted with you or with any insured for services; or
> > **(b)** Contracted with others on your behalf for services;
>
> Arising out of and in the course of employment by that organization or performing duties related to the conduct of that organization's business; …

Endorsement Number S94-CG (10/08), p.1 at 1(3)(b). Id.

The policy defines "you" and "your" as, "the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." SOF ¶ 21. As applied here, the term would include the insured, "DoVal." Thus, Exclusion 3(b) applies here where Munoz was employed by Gugas to provide services on behalf of DoVal.

## III.  ARGUMENT

Summary judgment is appropriate if the moving party demonstrates there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986), *cert. denied*, 484 U.S. 1066 (1988). Summary judgment is appropriate where the "pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Under Rule 56(c), "[o]nce the moving party avers an absence of evidence to support the non-moving party's case, the non-moving party must offer 'definite, competent evidence to rebut the motion.'" Rockwood v. SKF USA Inc., 758 F. Supp. 2d 44, 46 (D.N.H. 2010); *affirmed,* 2012 U.S. App. LEXIS 13288 (1st Cir. 2012). "A conglomeration of 'conclusory allegations, improbable inferences, and unsupported speculation' is insufficient to discharge the nonmovant's burden." Id. If the non-moving party's "evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986) (citations omitted).

Moreover, summary judgment may be granted where there is no genuine issue of material fact as to a single essential element of a claim on which the non-moving party will bear the burden proof at trial. Celotex, 477 U.S. at 322. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" Id. at 322-323.

**A. Interpretation of Insurance Policy**

It is well established that the interpretation of an insurance policy is a question of law for the Court. See Cody v. Connecticut General Life Insurance Co., 387 Mass. 142, 146 (1982); MBTA v. Allianz Ins. Co., 413 Mass. 473, 476 (1992) (where "there are no material facts in dispute" and "[t]he only dispute is about the proper interpretation of the relevant…[exclusions], "the dispute raises a question of law only.") (citation omitted); Sullivan v. Utica Mutual Ins. Co., 439 Mass. 387, 393 (2003). Where the allegations lie expressly outside the policy coverage and its purposes, summary judgment for the insurer is proper. Dorchester Mut. Fire Ins. Co. v. First

Kostas Corp., 49 Mass. App. Ct. 651, 653 (2000).

Under Massachusetts law, words in an insurance policy must be interpreted in their usual and ordinary sense. City of Barnstable v. American Finance Corp., 51 Mass. App. Ct. 213, 215 (2000); see also Somerset Sav. Bank v. Chicago Title Ins. Co., 420 Mass. 422, 427 (1995) ("When the provisions of a policy are plainly and definitely expressed, the policy must be enforced in accordance with its terms").  Thus, the interpretation of clear policy terms does not require a trial; the court may interpret the policy as a matter of law.  Policy language is "ambiguous" only where "reasonably susceptible of more than one meaning." Nelson v. Cambridge Mut. Fire Ins. Co., 30 Mass. App. Ct. 671, 673 (1991).  Ambiguity is not created by the mere fact of a disagreement between the parties over the interpretation of a particular provision.  Lumbermens Mut. Casualty Co. v. Offices Unlimited, 419 Mass. 462, 466 (1995); Home Ins. Co. v. Liberty Mut. Fire Ins. Co., 444 Mass. 599, 602 (2005).

The same interpretative rules apply to policy exclusions as well as exclusionary endorsements.  Hakim v. Massachusetts Insurers' Insolvency Fund, 424 Mass. 275, 281 (1997); Nautilus Ins. Co. v. 51-67 Stuart Realty Trust, 2005 Mass. Super. Lexis 6 at *9 (Feb. 3, 2005), citing Liquor Liability Joint Underwriting Ass'n v. Hermitage, 419 Mass. 316, 320 (1995).  Unambiguous policy exclusions are read in their plain and ordinary manner.  Courts are not free to revise or change the order of the words.  Massachusetts Property Ins. Underwriting Ass'n v. Gallagher, 75 Mass. App. Ct. 58, 60 (2009).

**B.  The Duty To Defend**

Where an insurance company files suit to seek a declaration regarding coverage of an insured in a separate action, the court will not examine the merits of the underlying claims.  Rather, the initial duty of the insurer to defend is decided by matching the complaint against the

policy's provisions: "if the allegations of the complaint are reasonably susceptible of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense." Continental Casualty Co. v. Gilbane Building Co., 391 Mass. 143, 146 (1984). "When the allegations in the underlying complaint lie expressly outside the policy coverage and its purpose, the insurer is relieved of the duty to investigate or defend the claimant." Herbert A. Sullivan, Inc., 439 Mass. at 394; Dorchester Mut. Fire Ins. Co. 49 Mass. App. Ct. at 653.

### C. There Is No Coverage Under The Northland Policy

The above concepts are well-established and long-accepted. Applied to this case, they require that the Court enter summary judgment in favor of Northland and conclude that it has no duty to defend or indemnify DoVal as it relates to Mr. Munoz's "bodily injury" and the underlying Munoz action.

The crux of this case is the "Exclusion – Injury to Employees, Workers or Contracted Persons of Insured Or Contracted Organizations" (the "Contracted Persons Exclusion") in the Northland policy. The Contracted Persons Exclusion precludes coverage for bodily injury to certain "persons," including employees of DoVal and others working on the project. More specifically, the exclusion precludes coverage where "bodily injury" occurs to "(3) any person who is employed by, is leased to or contracted with any organization that: (a) contracted with you or with any insured for services; (b) contracted with others on your behalf for services…"

There are several categories of injured "persons" for whom the Contracted Persons Exclusion precludes coverage, including the following:

- There is no coverage for "bodily injury" to any "person" who is "employed by...any organization that...contracted with [DoVal]...for services", i.e. an employee of DoVal's subcontractor (Winter Hill); and

- There is no coverage for "bodily injury" to any "person" who is "employed by...any organization that ...contracted with others on [DoVal's] behalf for services", i.e., an employee of DoVal's sub-subcontractor.

The last category, Section 3(b) of the exclusion, clearly applies to preclude coverage for the Munoz Action. As the general contractor, the work on the project was necessarily done for the benefit of DoVal and on DoVal's behalf.

To complete the project, DoVal hired Winter Hill as its subcontractor to perform the roofing work. In turn, Winter Hill contracted with Gugas to act as the sub-subcontractor to provide additional workers to perform the roofing work on the project. Mr. Munoz was employed by Gugas, DoVal's sub-subcontractor, and was allegedly injured while performing roofing work on the project. As such, the Munoz action involves "bodily injury" to a "person," i.e., Mr. Munoz, who is "employed by" an "organization," i.e., Gugas, that "contracted with others," i.e., Winter Hill, on DoVal's behalf "for services," i.e., the roofing work on the project.

Although the language and issues are slightly different, Massachusetts courts have applied similar exclusions to independent contractors hired by sub-contractors. For example, in Cable Mills, LLC v. Coakley Pierpan Dolan & Collins Ins. Agency, Inc., an independent contractor, William Barry, was allegedly injured as a result of falling through the floor at a project. Cable Mills, LLC v. Coakley Pierpan Dolan & Collins Ins. Agency, Inc., 82 Mass. App. Ct. 415 (2012), **Appendix A hereto.** The owner of the property, Cable Mills, had entered into a

contract with Feingold for architectural services for the project. In turn, Feingold retained Barry to provide structural engineering consultation on the project.

Cable Mills' policy excluded claims for "bodily injury…for operations performed for you by independent contractors…" Cable Mills' insurer, Lloyd', London was granted summary judgment on the basis of the exclusion. On appeal, Cable Mills argued that the plain language of the exclusion did not apply to Barry's injuries because Feingold, rather than Cable Mills, retained Barry, and as such, any services provided by Barry were "performed for" Feingold, not Cable Mills. The Massachusetts Appeals Court affirmed the trial court judge and found that "the performance of professional engineering services essential to the project, pursuant to a contract between the property owner and its architect, sufficiently fulfills the common meaning of 'operations performed for you.'"

As the judge found in allowing summary judgment for Lloyd's, in Cable Mills, the analysis in U.S. Underwriters Ins. Co. v. Beckford is persuasive. U.S. Underwriters Ins. Co. v. Beckford, 1998 U.S. Dist. LEXIS 574 (E.D.N.Y. 1998), **Appendix B hereto.** In Beckford, the policy excluded coverage for bodily injury to the employee of a contractor "hired by or for any insured." In holding that the exclusion precluded coverage for a suit by an employee of a sub-subcontractor who was injured while working on a construction project, the court stressed that the exclusion, as here, "clearly contemplate[d] that a contractor could be retained by a party other than the insured on the insured's behalf, and that an injury to that contractor or its employee would fall within the scope of the exclusion." Id. at *10. Just as the work of the sub-subcontractor was on behalf of the insured in Beckford, the work of the sub-subcontractor on the project here was necessarily on behalf of DoVal. In Beckford, the court plainly rejected the

insured's argument that the exclusion applies only where the insured directly hires the employer of the injured claimant. Id.

As set forth above, a plain reading of the exclusion and the relevant judicial authority supports the granting of summary judgment to the Plaintiff in this matter.

**IV.**    <u>**Conclusion**</u>

The Northland policy unambiguously excludes Mr. Munoz's claims. Accordingly, Northland has no duty to defend or indemnify DoVal in the underlying lawsuit. Summary judgment must enter in favor of Northland.

Respectfully submitted,

NORTHLAND INSURANCE COMPANY,

By its attorneys,

Dated: September 26, 2014

*/s/ Craig D. Levey*
Joseph S. Berman, BBO 566006
Erin Howard, BBO 666955
Craig D. Levey, BBO 681531
Looney & Grossman LLP
101 Arch Street, 9th Floor
Boston, MA 02110
617-951-2800
jberman@lgllp.com
ehoward@lgllp.com
clevey@lgllp.com

## CERTIFICATE OF SERVICE

I, Craig D. Levey, hereby certify that on this 26th day of September, 2014, I filed the foregoing on the ECF system, which will provide notice to all counsel of record.



_/s/ Craig D. Levey_____

Craig D. Levey

4817-6444-6750, v. 4

# APPENDIX A

# *Cable Mills, LLC v. Coakley Pierpan Dolan & Collins Ins. Agency, Inc.*

Appeals Court of Massachusetts

June 4, 2012, Argued; September 11, 2012, Decided

No. 11-P-1852.

**Reporter**

82 Mass. App. Ct. 415; 974 N.E.2d 1134; 2012 Mass. App. LEXIS 246; 2012 WL 3893165

CABLE MILLS, LLC vs. COAKLEY PIERPAN DOLAN AND COLLINS INSURANCE AGENCY, INC.; CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, third-party defendants.

**Prior History:** [***1] Middlesex. Civil action commenced in the Superior Court Department on January 15, 2010. A third-party complaint for declaratory relief was heard by Mitchell H. Kaplan, J., on motions for summary judgment, and entry of separate and final judgment was ordered by Dennis J. Curran, J.

**Disposition:** Judgment affirmed.

## Core Terms

independent contractor, services, subcontractor, insured, hired, operations, contractor, consultants, coverage, injuries, general contractor, engineering, summary judgment, Underwriters, parties, privity, construction project, excluded coverage, circumstances, renovation, contracts, applies

## Case Summary

### Procedural Posture

Plaintiff insured sued defendant agent in the Superior Court Department for Middlesex (Massachusetts), for failure to obtain the proper insurance coverage. The agent brought a third-party complaint against third-party defendant insurer, for a declaration that the policy issued by the insurer afforded coverage to the insurer for the claims in an underlying lawsuit. The court granted the insurer summary judgment. The insured and its agent appealed.

### Overview

The insured, which owned an old mill that it intended to renovate, entered into a contract with an architectural firm for architectural services for the project. In turn, the architectural firm retained a structural engineer to provide structural engineering consultation on the project. The structural engineer allegedly sustained serious injuries as a result of falling through the floor at the site of the project. The insured was covered by a commercial property and general liability insurance policy that was issued by the insurer. The insurer, relying on a provision of the policy which excluded coverage for independent contractors, denied coverage for injuries sustained by the structural engineer and declined to defend the insured in the underlying litigation in which the structural engineer sued the insured for the structural engineer's personal injuries. On appeal, the court found that the provision in the insurance policy which excluded coverage for independent contractors applied in the case. Consequently, the provision had the effect of barring indemnity and defense of the insured in connection with the personal injury lawsuit brought against it.

### Outcome

The judgment was affirmed.

## LexisNexis® Headnotes

Insurance Law > ... > Procedure > Evidence & Trial > Burdens of Proof

Insurance Law > Claim, Contract & Practice Issues > Policy Interpretation > Exclusions

Page 2 of 8

82 Mass. App. Ct. 415, *415; 974 N.E.2d 1134, **1134; 2012 Mass. App. LEXIS 246, ***1

Insurance Law > Claim, Contract & Practice Issues > Policy Interpretation > Ordinary & Usual Meanings

Insurance Law > Claim, Contract & Practice Issues > Policy Interpretation > Plain Language

Insurance Law > Claim, Contract & Practice Issues > Policy Interpretation > Question of Law

*HN1* The interpretation of an insurance contract is a question of law for a court. Like all contracts, insurance contracts are to be construed according to the fair and reasonable meaning of the words in which the agreement of the parties is expressed. A policy of insurance whose provisions are plainly and definitely expressed in appropriate language must be enforced in accordance with its terms. The insured generally bears the burden of proving that a particular claim falls within a policy's coverage, while the insurer has the burden of proving the applicability of a particular exclusion.

Insurance Law > Claim, Contract & Practice Issues > Policy Interpretation > Ordinary & Usual Meanings

Insurance Law > Claim, Contract & Practice Issues > Policy Interpretation > Plain Language

*HN2* All material terms in an insurance policy must be interpreted in a reasonable manner that is consistent with the background and purpose of the entire policy.

Insurance Law > Claim, Contract & Practice Issues > Policy Interpretation > Ordinary & Usual Meanings

*HN3* The word "for" in the term "for you" means having as goal or object.

Labor & Employment Law > Employment Relationships > Independent Contractors

*HN4* The essence of the distinction between independent contractors and employees under common law has always been the right to control the details of the performance, and the freedom from supervision not only as to the result to be accomplished but also as to the means and methods that are to be utilized in the performance of the work. An independent contractor is therefore only responsible for the accomplishment of an agreed result in an agreed manner. He nevertheless maintains complete control over the task for which he contracted. In a similar vein, one who is hired in the role of subcontractor is awarded a portion of an existing contract by a contractor, especially a general contractor, and retains a large degree of discretion in how to execute the subcontracted work for which he is responsible. Thus, when contrasted with the typical employer-employee relationship, independent contractors and subcontractors fulfill roles comparable to when a general (independent) contractor is hired to oversee a construction project, and the general contractor in turn hires a subcontractor to perform a unique set of services to complete the job. In this particular context, a subcontractor can, therefore, be viewed as an independent contractor, and a party to the contract is bound to accept the dual nature of said subcontractors.

Labor & Employment Law > Employment Relationships > Independent Contractors

Real Property Law > Construction Law > Contractors & Subcontractors

Torts > Vicarious Liability > Independent Contractors > General Overview

*HN5* In carving out the unique role of the independent contractor in a construction setting, an employer is not liable for the torts of an independent contractor unless the employer retained some control over the manner in which the work was performed.

Real Property Law > Construction Law > Contractors & Subcontractors

*HN6* As established by usage in the building trades, a subcontractor is one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract.

Labor & Employment Law > Employment Relationships > Independent Contractors

*HN7* *Mass. Gen. Laws ch. 149, § 148B* (as amended by 2004 Mass. Acts ch. 193, § 26) distinguishes between employees and independent contractors based on three basic criteria, including the level of control and direction afforded a worker in connection with the performance of the service; whether the service is within the employer's

Page 3 of 8

82 Mass. App. Ct. 415, *415; 974 N.E.2d 1134, **1134; 2012 Mass. App. LEXIS 246, ***1

scope of business; and whether the worker is customarily engaged in an independently established trade, occupation, profession or business.

Insurance Law > Claim, Contract & Practice Issues > Policy Interpretation > Ordinary & Usual Meanings

*HN8* Under Massachusetts law, the phrase "arising out of" is generally understood to mean originating from, growing out of, flowing from, incident to, or having connection with.

Workers' Compensation & SSDI > Coverage > Employment Status > Contractors

*HN9* Under Massachusetts Workers' Compensation law, an insured employer who contracts to have work done by an uninsured independent contractor, may become liable to pay the workers' compensation claim of an injured employee of an independent contractor. *Mass. Gen. Laws ch. 152, § 18*.

# Headnotes/Syllabus

### Headnotes

*Practice, Civil*, Summary judgment. *Contract*, Insurance. *Insurance*, Construction of policy. *Words*, "Independent contractor," "Subcontractor."

**Counsel:** Anthony J. Cichello for the plaintiff.

William P. Rose for the defendant.

John Egan for the third-party defendants.

**Judges:** Present: Vuono, Sikora, & Fecteau, JJ.

**Opinion by:** FECTEAU

# Opinion

[*416] [**1136] FECTEAU, J. Cable Mills, LLC (Cable Mills), and Coakley Pierpan Dolan and Collins Insurance Agency, Inc. (Coakley), appeal from the allowance, by a judge of the Superior Court, of the motion for summary judgment in favor of the third-party defendants, certain underwriters at Lloyd's, London (Lloyd's).[1] At issue is whether a provision in a commercial property and general liability policy excluding coverage for independent contractors applies in the instant case, which would have the effect of barring indemnity and defense of the insured party, Cable Mills, in connection with a personal injury lawsuit brought against it. The lawsuit, brought by William Barry, a structural engineer hired to assist in the renovation of an old mill (project), [***2] originates from a March 13, 2006, accident in which Barry is alleged to have sustained serious injuries as a result of falling through the floor at the site of the project (underlying litigation).[2] As we agree that the exclusion applies to Barry in these circumstances, we affirm the allowance of summary judgment.

Background. Cable Mills owned an old mill located at 160 Water Street in Williamstown, which it intended to renovate into a complex of mixed-use (i.e., commercial and residential) condominium units. Toward that end, in December, 2005, Cable Mills entered into a contract with Feingold Alexander & Associates, Inc. (Feingold) for architectural services for the project; in turn, Feingold retained Barry to provide structural engineering consultation on the project.

---

[1]  Cable Mills filed an assertion of direct claim against Lloyd's; cross motions for summary judgment filed by both Cable Mills and Coakley were denied.

[2]  Barry's wife is also a plaintiff in that suit, alleging loss of consortium. We refer to them in the singular.

CRAIG LEVEY

Page 4 of 8

82 Mass. App. Ct. 415, *416; 974 N.E.2d 1134, **1136; 2012 Mass. App. LEXIS 246, ***2

At the time of Barry's accident, Cable Mills was insured under a commercial property and general liability policy (policy) issued by Lloyd's, which was limited, by [***3] endorsement, to "one building only,"[3] described by the declarations page as a "vacant building." Cable Mills was a customer of Coakley with regard to the insurance for the project, and Coakley provided the policy, [*417] running from October 21, 2005, to April 21, 2006, through a surplus lines broker. The policy included the following standard provision: "This insurance does not apply to 'bodily injury,' 'property damage,' 'personal injury,' 'advertising injury,' or medical payments for operations performed for you[4] by independent contractors or your acts or omissions in connection with your general supervision of such operations" (exclusion). Relying on this exclusion, Lloyd's denied coverage for injuries sustained by Barry and declined to defend Cable Mills in the underlying litigation.

Cable Mills brought an action against its agent, Coakley, for negligence and violation of G. L. c. 93A and c. 176D, alleging Coakley failed to obtain the proper insurance coverage. In addition to denying liability, Coakley brought a third-party complaint against Lloyd's seeking [***4] a declaration that the policy issued by Lloyd's does in fact afford coverage to Cable Mills for the claims brought by Barry. On cross motions for summary judgment, a Superior Court judge denied the motions [**1137] brought by Cable Mills and Coakley and allowed the motion brought by Lloyd's.[5] In finding no genuine dispute of fact, the judge relied on the policy exclusion. Lloyd's filed a motion for final and separate judgment, Mass.R.Civ.P. 54(b), 365 Mass. 820 (1974), which was allowed.

Discussion. On appeal, Cable Mills and Coakley[6] argue that the plain language of the exclusion does not apply to Barry's alleged injuries because Feingold, rather than Cable Mills, retained Barry, and as such, any services provided by Barry were necessarily "performed for" Feingold, not Cable Mills, an employment relationship that falls outside the scope of the contractual language. Lloyd's avers, to the contrary, that such a narrow construction of the working relationship referred to by the exclusionary language [***5] is improper and contrary to the plain meaning of the contract. We agree with the judge that performance of [*418] professional engineering services essential to the project, pursuant to a contract between the property owner and its architect, sufficiently fulfills the common meaning of "operations performed for you."

The issue at bar is one well-suited for summary judgment, since **HN1** the "interpretation of an insurance contract is a question of law for the court." Kelleher v. American Mut. Ins. Co., 32 Mass. App. Ct. 501, 503. 590 N.E.2d 1178 (1992). "Like all contracts, insurance contracts are to be construed according to the fair and reasonable meaning of the words in which the agreement of the parties is expressed. A policy of insurance whose provisions are plainly and definitely expressed in appropriate language must be enforced in accordance with its terms." Cody v. Connecticut Gen. Life Ins. Co., 387 Mass. 142, 146, 439 N.E.2d 234 (1982) (quotations and citations omitted). The insured generally bears the burden of proving that a particular [***6] claim falls within a policy's coverage, see Markline Co. v. Travelers Ins. Co., 384 Mass. 139, 140, 424 N.E.2d 464 (1981), while the insurer has the burden of proving the applicability of a particular exclusion. See Hanover Ins. Co. v. Talhouni, 413 Mass. 781, 785, 604 N.E.2d 689 (1992); Great Southwest Fire Ins. Co. v. Hercules Bldg. & Wrecking Co., 35 Mass. App. Ct. 298, 302, 619 N.E.2d 353 (1993).

1. Scope of the exclusion. a. Beckford analysis. Turning to the contested interpretation of the phrase "for you," as used in the exclusion, we find the plain meaning of the phrase to encompass all work done to further the project undertaken by Cable Mills, including those services provided by Barry. As the judge found in allowing summary judgment for Lloyd's, the analysis in U.S. Underwriters Ins. Co. v. Beckford, No. 93-CV-4272, 1998 U.S. Dist. LEXIS 574, at *6-*7 (E.D.N.Y. Jan. 20, 1998), is persuasive and applicable to the question of whether privity is required by the exclusion. In Beckford, the relevant policy excluded coverage for any "bodily injury to any employee of any insured, to any contractor hired or retained by or for any insured or to any employee of such contractor" (emphasis added). 1998 U.S.

---

[3]   There is no issue whether the accident occurred at the insured premises.

[4]   As defined under the policy, "you" refers to Cable Mills.

[5]   In denying coverage, Lloyd's also relied on the exclusion from coverage for independent contractors' employees or leased workers, but the judge did not reach the issue. We also do not address this issue.

[6]   While we acknowledge the distinct interests of Cable Mills and Coakley, in the interest of simplicity, where their arguments overlap, we will refer to them collectively as "Cable Mills."

Page 5 of 8

82 Mass. App. Ct. 415, *418; 974 N.E.2d 1134, **1137; 2012 Mass. App. LEXIS 246, ***6

*Dist. LEXIS 574, [WL] at *3*. The owner and general contractor [***7] of the project therein challenged the applicability [**1138] of the exclusion, arguing (1) that the injured party was not hired by the owner directly, and (2) that the injured party was a subcontractor and thus outside the scope [*419] of the exclusion. *1998 U.S. Dist. LEXIS 574, [WL] at *8*. The *Beckford* court rejected both claims, and its analysis is instructive to the issues here. *1998 U.S. Dist. LEXIS 574, [WL] at *9-*12*.

In *Beckford*, the court held that the plain and ordinary meaning of the exclusion clause applied to the factual circumstances presented, whereby a general contractor retained another contractor "to perform work on real property owned by [the owner that] necessarily was for the benefit of [the owner]." *1998 U.S. Dist. LEXIS 574, [WL] at *9*. Moreover, the court interpreted the exclusionary provision in *Beckford* to "clearly contemplate[] that a contractor could be retained by a party other than the insured on the insured's behalf." *1998 U.S. Dist. LEXIS 574, [WL] at *10*. Cable Mills does not dispute the validity of the reasoning in *Beckford*, but it nevertheless attempts to draw a material, factual distinction between the exclusion there and the exclusion in the instant case. We find no such distinction.[7]

The *Beckford* court focused its analysis on the interpretation of the terminology "for any insured," which is instructive as far as it understands the language, "retained by or for any insured," to signify that the exclusion applies even in circumstances [***9] where a party is hired on the insured's behalf, by someone other than the insured itself. See *1998 U.S. Dist. LEXIS 574, [WL] at *9-*10*. In so opining, the court implicitly rejected the view, identical to the view proffered by Cable Mills here, that where a policy includes such language, the parties intended to equate the hiring party with the party for which the services are ultimately being performed. Rather, the *Beckford* decision makes clear that the word "for" is to be broadly applied to include the ultimate beneficiary of the services as well [*420] as the hiring party. We adopt the rationale of the *Beckford* court and therefore conclude that the exclusion applies to Barry, where the nature of the services he performed were expressly in furtherance of Cable Mills' project.

b. Application of exclusion. **HN2** All material terms in the policy must be interpreted in a reasonable manner that is consistent with the background and purpose of the entire policy. *Sullivan v. Southland Life Ins. Co., 67 Mass. App. Ct. 439, 442, 854 N.E.2d 138 (2006)*. **HN3** The word "for" in the term "for you" means "having as goal or object." Webster's Third New International Dictionary 886 (2002). The circumstances of Barry's hiring, well-documented in the record, demonstrate [***10] that the engineering services provided by Barry furthered the renovation project. Cable [**1139] Mills originally retained Feingold for architectural services in connection with its renovation project; its contract with Feingold (Feingold contract) clearly anticipated that Feingold would, in aid of its performance for Cable Mills, retain consultants.[8] Indeed, Feingold identified Barry as such a consultant in its contract with Cable Mills. The record is thus clear that Barry was to perform his specific engineering services to assist in the project initiated by Cable Mills.

---

[7] With regard to the secondary argument asserted by Cable Mills, that the *Beckford* decision [***8] is distinguishable based on the court's finding that the owner of the project maintained "close ties" with the general contractor, we find such contentions to be without merit. However relevant the factual finding that the owner and the general contractor in *Beckford* shared some responsibilities in overseeing the construction project, Cable Mills is mistaken in its application of this fact. Specifically, the *Beckford* court based its finding of close ties on the fact that the two entities were governed by the same president. The contract between the two parties anticipated that the general contractor would retain subcontractors, and the owner had a right to refuse the hiring of any subcontractor. *Beckford, supra, 1998 U.S. Dist. LEXIS 574, [WL] at *10-*11*. While we acknowledge that Cable Mills and Feingold did not share such an intimate business relationship, the signed contract between them explicitly contemplated the retention of Barry for structural engineering services.

[8] Section 1.2.3 of the Feingold contract states: "The services performed by the Architect, the Architect's employees and Architect's consultants shall be as enumerated in Article 1.4."

In § 1.2.3.4, the Feingold contract states, in part: "The Architect shall require Architect's consultants similar agreements to maintain the confidentiality of information specifically designated as confidential by the Owner."

Section 2.1.9 of the Feingold contract states, in part: "As part of Basic Services, the Architect will coordinate the services of the Architect's consultants, including without limitation, all consultants listed in paragraph [***11] 1.1.3.5 [where Barry is expressly listed]."

Page 6 of 8

82 Mass. App. Ct. 415, *420; 974 N.E.2d 1134, **1139; 2012 Mass. App. LEXIS 246, ***11

While Barry's actual consultations would likely be with Feingold, the overarching reality of that relationship was that Barry's services were performed for the Cable Mills project, without which Barry's services would have been unnecessary and unbidden. The record contains an unambiguous proposed agreement between Feingold and Barry, which states in its opening [*421] paragraph that Barry's services are "for the General Cable Mills Project in Williamstown, Massachusetts" (emphasis added). Regardless of the nature of their individual contractual agreements, Cable Mills as the owner, Feingold as a contractor, and Barry as a subcontractor each agreed and actively worked toward the common goal of completing Cable Mills's project. [***12] The exclusion here falls squarely within the analysis articulated in *Beckford*.

2. Privity requirement. On a more fundamental level, Cable Mills challenges the applicability of the exclusion to a contracting party that does not stand in direct privity to the insured, alleging that the parties did not intend to cover all subcontractors and sub-subcontractors that are subsequently hired by the first-tier, independent contractors. No Massachusetts court has yet directly addressed the issue before us, namely, whether direct privity is required by the standard independent contractor exclusion within a general commercial liability contract. To determine whether the phrase "independent contractor" and "subcontractor" are mutually exclusive for the purposes of general commercial liability insurance, existing case law foreshadows our conclusion today that they are not.

a. Scope of "independent contractor" and "subcontractor" terminology. We turn first to the plain meaning of the terms "independent contractor" and "subcontractor" to determine the role of each in the underlying construction project.

HN4 "The essence of the distinction [between independent contractors and employees] under common law has [***13] always been the right to control the details of the performance, . . . and the freedom from supervision 'not only as to the result to be accomplished but also as to the means and methods that are to be utilized in the performance [**1140] of the work.'" *Athol Daily News v. Board of Review of the Div. of Employment & Training, 439 Mass. 171, 177, 786 N.E.2d 365 (2003)*, quoting from *Maniscalco v. Director of the Div. of Employment Sec., 327 Mass. 211, 212, 97 N.E.2d 639 (1951)*. See *Restatement (Second) of Agency § 2* (1958) ("An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking. He may or may not be an agent"). An independent contractor is therefore "only responsible [*422] for the accomplishment of an agreed result in an agreed manner." *Brigham's Case, 348 Mass. 140, 141-142, 202 N.E.2d 597 (1964)*.[9] He nevertheless maintains complete control over the task for which he contracted. In a similar vein, one who is hired in the role of subcontractor "is awarded a portion of an existing contract by a contractor, esp[ecially] a general contractor," Black's Law Dictionary [***14] 1560 (9th ed. 2009), and retains a large degree of discretion in how to execute the subcontracted work for which he is responsible. See Lewin & Schaub, Construction Law § 1:7 (2012).[10] Thus, when contrasted with the typical employer-employee relationship, independent contractors and subcontractors fulfill roles comparable to when a general (independent) contractor is hired to oversee a construction project, and the general contractor in turn hires a subcontractor to perform a unique set of services in order to complete the job.[11] In this particular context, a subcontractor can, therefore, be viewed as an independent contractor, see *Nash v. Damson Oil*

---

Section 2.6.6.7 of the Feingold contract requires that the owner be named as an additional insured on all policies maintained by the Architect (including general liability) and states, in relevant part: "Architect shall assure that any and all consultants engaged or employed by Architect carry and maintain similar insurance with reasonably prudent limits and coverages in light of their services to be rendered by such consultants."

[9]  We further note that, HN5 in carving out the unique role of the independent contractor in a construction setting, an employer is likewise not liable for the torts of an independent contractor unless the employer "retained some control over the manner in which the work was performed." *Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 407, 788 N.E.2d 522 (2003)*.

[10]  This interpretation of subcontractor is consistent with [***15] the meaning given to said term by the United States Supreme Court in interpreting the Miller Act: HN6 "as established by usage in the building trades, a subcontractor is one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract." *Clifford F. MacEvoy Co. v. United States, 322 U.S. 102, 108-109, 64 S. Ct. 890, 88 L. Ed. 1163 (1944)*.

[11]  To this end, we find persuasive authority in the language of HN7 G. L. c. 149, § 148B, as amended by St. 2004, c. 193, § 26, which distinguishes between employees and independent contractors based on three basic criteria, including the level of "control and

CRAIG LEVEY

Page 7 of 8

82 Mass. App. Ct. 415, *422; 974 N.E.2d 1134, **1140; 2012 Mass. App. LEXIS 246, ***15

Corp., 480 So. 2d 1095, 1100 (Miss. 1985), and a party to the contract is bound to accept the dual nature of said subcontractors.

b. Application to Feingold and Barry. As laid out in the record, [*423] Feingold and Barry assumed roles as independent contractors contributing to the Cable Mills project. Cable Mills expressly granted to Feingold the explicit authority to "manage the Architect's services and administer the Project," including coordinating the services of all consultants involved in the underlying project, but did not delegate any other responsibility to Feingold with regard [**1141] to the project. Moreover, Cable Mills specifically relied on Feingold's unique architectural expertise, described by Cable Mills as "substantial experience in design work comparable to the Project"; and it expected Feingold to "exercise all due professional care and diligence." It is clear from such language that Cable Mills did not intend to exercise control over architectural work.

In the proposal letter submitted by Barry to Feingold, Barry is afforded a similar degree of control with regard to structural engineering and limited duties with regard to the rest of the project. The proposal letter clearly sets out the scope of Barry's responsibilities for the project and also lists the services that will be performed [***17] by others, such as geotechnical and soil testing. In short, the plain terms of the business agreements describe services delegated to Feingold and Barry respectively as those to be performed by independent contractors. As such, subcontractors, or those not in direct privity to the insured party, such as Barry, as well as general contractors who are party to a direct contract, such as Feingold, qualify as independent contractors under the plain meaning of the exclusion.

3. Failure to include "arising out of" language. Cable Mills next argues that the failure by Lloyd's to use a more broadly worded exclusion should limit the scope of the exclusion and, thus, not apply to the injuries sustained by Barry. To this end, Cable Mills avers that the cases relied upon by the judge are inapplicable because the language utilized in the exclusions in those cases (precluding coverage for injury or damage "arising out of operations performed for any insured by independent contractors," see U.S. Underwriters Ins. Co. v. Landau, 679 F. Supp. 2d 330, 339 [E.D.N.Y. 2010]) is significantly broader than the language at issue here. The "arising out of" language has been found to be unambiguous and has withstood [***18] attacks to its validity. See id. at 339, and cases cited. Cable Mills suggests that [*424] because Lloyd's did not draft the exclusionary clause in the instant case using the phrase "arising out of," a phrase that signifies a requirement that the covered bodily injury would not have occurred "but for" the services rendered by the contracting party, the exclusion is inapplicable to subcontractors hired by independent contractors. See id. at 339-340. In other words, Cable Mills argues the exclusion does not apply to the harm endured by Barry, the subcontractor, because his injuries were not the direct result of activity "performed for" Cable Mills but, instead, were the result of an indirect relationship between him and Cable Mills. This contention misunderstands the central issue on appeal and is factually incorrect.

First, we take issue with Cable Mills's distinction between independent contractors and subcontractors. We have concluded, supra, that subcontractors qualify as independent contractors for the purposes of this policy.

Turning to the scope of the exclusion, Cable Mills asserts that the entire clause, "for operations performed for you," should be interpreted narrowly to apply only [***19] to those injuries sustained by independent contractors who are hired directly by and exclusively work "for" Cable Mills, an averment that confuses the causation requirements with the restricted scope of the underlying exclusion. We agree with Lloyd's in two separate respects: (1) there is no meaningful difference between "arising out of operations" and "for operations" with regard to services performed by Barry on the renovation project, and (2) the only reasonable interpretation of the phrase "for you" is to read the word "for" as describing the excluded services as [**1142] those performed in furtherance of the construction project initiated by Cable Mills.

While Cable Mills insists that "arising out of" and "for" are legally distinct, we find any difference in meaning to be immaterial to the main issue in contention: whether the exclusion applies only to those contractors who are in direct

direction [afforded the worker] in connection with the performance of the service"; whether the service is within the employer's scope of business; and whether the worker is "customarily engaged in an independently established trade, occupation, profession or business." Barry, who was "customarily engaged" as a structural engineer and retained by Feingold to perform structural engineering services related to the underlying construction project, an expertise that neither Cable Mills nor Feingold possessed much less had the ability to supervise, is not an employee [***16] under this statute.

Page 8 of 8

82 Mass. App. Ct. 415, *424; 974 N.E.2d 1134, **1142; 2012 Mass. App. LEXIS 246, ***19

privity with Cable Mills or whether the parties intended for it to apply to a broader class of contractors. *HN8* "Under Massachusetts law, the phrase arising out of is generally understood to mean originating from, growing out of, flowing from, incident to, or having connection with." *Certain Interested Underwriters at Lloyds* [*425] *London v. Stolberg, No. 09-cv-11279-NMG, 2011 U.S. Dist. LEXIS 107979, at *15 (D. Mass. Sept. 2, 2011)* [***20] (*Stolberg I*) (quotations omitted).[12] Even if Lloyd's, in the exclusion in this case, had included the phrase "arising out of operations" in place of the phrase "for operations," at best creating a broader nexus between the covered injuries and their underlying actions, the parties would still disagree whether the exclusion should apply to Barry, because Barry was ultimately hired by Feingold and not Cable Mills. The entire clause, "for operations performed for you," addresses this relationship.

In fact, in *Stolberg I*, a case heavily relied upon by Cable Mills, the court contemplated such an application of an exclusionary provision. The court held that the underlying claim for coverage, as related to a lawsuit brought by an employee of a subcontractor who sustained injuries that "arose from" operations performed by the subcontractor, fell "squarely within the Independent Contractors' Exclusion." *2011 U.S. Dist. LEXIS 107979, [WL] at *16.* The policy provision at issue excluded coverage for injury "arising out of operations performed for you by said independent contractors." *2011 U.S. Dist. LEXIS 107979, [WL] at *5.* The same operative phrase, "performed for you," is at issue in the present case, and we accept the reasoning in *Stolberg I*, which reaffirms our earlier analysis that a party that qualifies as either an independent contractor, or an employee thereof, and performs services benefitting the insured party falls within the exclusion.[13]

Judgment affirmed.

---

[12] In *Massachusetts Property Ins. Underwriting Assn. v. Gallagher, 75 Mass. App. Ct. 58, 60, 911 N.E.2d 808 (2009)*, we suggested that the phrase "arising out of" is broader than the concept of proximate cause under tort law. See *Certain Interested Underwriters at Lloyds, London v. Stolberg, 680 F.3d 61, 67 (1st Cir. 2012)* (*Stolberg II*) ("The Contractors Exclusion broadly excludes coverage for any claims -- including those brought by members of the general public -- arising out of the operations of independent contractors). The *Stolberg II* court found such broad language might also encompass a claim [***21] by a member of the public, whereas when the circumstances here are considered, such a broad view is unnecessary for the exclusion to apply, i.e., but for the operations performed, the injury would not have occurred; thus the application of the exclusion is not precluded.

[13] Finally, to the extent that [***22] Cable Mills claims the exclusion must be read in context with other policy exclusions, we interpret the insurance policy to express a harmonious intention to exclude coverage for any injuries sustained by those individuals working on the project who ought to be covered by workers' compensation insurance policies. *HN9* "Under Massachusetts Workers' Compensation law, an insured employer, such as [Cable Mills], who contracts to have work done by an uninsured independent contractor, may become liable to pay the workers' compensation claim of an injured employee of an independent contractor." See *Stolberg I, supra, 2011 U.S. Dist. LEXIS 107979, [WL] at *18.* See also *G. L. c. 152, § 18.*

# APPENDIX B

## *U.S. Underwriters Ins. Co. v. Beckford*

United States District Court for the Eastern District of New York

January 20, 1998, Decided

Case No. 93-CV-4272 (FB)

### Reporter

1998 U.S. Dist. LEXIS 574; 1998 WL 23754

U.S. UNDERWRITERS INSURANCE COMPANY, Plaintiff, -against- HECKTOR BECKFORD, EULALIE BECKFORD, THE CITY OF NEW YORK, PARTNERS FOR HOUSING, BRENDER HECHT ASSOCIATES, INC., AND F.G.R., INC., Defendants.

**Disposition:** [*1] Underwriters' motion for summary judgment granted. Cross-motion for summary judgment filed by Partners and Brender Hecht denied.

## Core Terms

contractor, insured, subcontractor, premises, applies, hired, summary judgment motion, coverage, general contractor, state court action, summary judgment, employees, indemnify, genuine

## Case Summary

### Procedural Posture

Plaintiff insurer sought a declaratory judgment that it was not required to defend and indemnify defendant insured in a personal injury action filed against both the insured and defendant general contractor because of a policy exclusion for employee injuries. The parties each filed motions for summary judgment.

### Overview

The insured hired the general contractor to perform work on a building. A worker who was employed by a subcontractor filed an action against the insured and the general contractor after being injured. The court granted the insurer's motion for summary judgment. It rejected the insured's and the general contractor's argument that the worker was not the employee of a contractor "hired or retained by or for" the insured. It stated that under the policy's plain language, the general contractor's retention of a subcontractor to perform work on the insured's property was for the benefit of the insured and therefore the worker fell within the exclusionary language. It rejected the argument that the exclusion did not apply because the subcontractor was not a contractor, stating that the term "contractor" encompassed both general contractors and subcontractors. It held that evidence outside the four corners of the document was inadmissible. It refused to redact the policy to delete the exclusion based on the fact that the policy was not countersigned until after the accident occurred, stating that if the date of countersignature were determinative, then the entire policy would have failed.

### Outcome

In a declaratory judgment action brought by the insurer against the insured and a general contractor, the court granted the insurer's motion for summary judgment and denied the insured's and the general contractor's cross-motion for summary judgment.

## LexisNexis® Headnotes

Civil Procedure > ... > Discovery > Methods of Discovery > General Overview

Civil Procedure > ... > Summary Judgment > Burdens of Proof > General Overview

Civil Procedure > ... > Summary Judgment > Motions for Summary Judgment > General Overview

Civil Procedure > ... > Summary Judgment > Opposing Materials > General Overview

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > General Overview

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Appropriateness

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Genuine Disputes

Civil Procedure > ... > Summary Judgment > Supporting Materials > General Overview

***HN1*** A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*. The burden is on the moving party to identify those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits that it believes demonstrates the absence of a genuine issue of material fact. All ambiguities must be resolved, and all inferences drawn, in favor of the nonmoving party. The judge's role in reviewing a motion for summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. Once the moving party has carried its burden, the opposing party must do more than simply show that there is some metaphysical doubt as to the material facts. The non-moving party must come forward with specific facts showing that there is a genuine issue for trial.

Civil Procedure > ... > Federal & State Interrelationships > Choice of Law > General Overview

Insurance Law > ... > Commercial General Liability Insurance > Obligations of Parties > General Overview

***HN2*** Under New York law, questions regarding an insurer's duties in respect to events that occurred in New York are governed by New York law.

Civil Procedure > Trials > Jury Trials > Province of Court & Jury

Contracts Law > Contract Interpretation > General Overview

Contracts Law > Defenses > Ambiguities & Mistakes > General Overview

Insurance Law > Claim, Contract & Practice Issues > Policy Interpretation > General Overview

Insurance Law > ... > Policy Interpretation > Ambiguous Terms > General Overview

***HN3*** Under New York law, courts interpreting insurance policies follow the general contract principle that the initial interpretation of a contract is a matter for the court to decide. If the contract is ambiguous, it should be submitted to the trier of fact; however, if the contract is capable of only one reasonable interpretation, the court must give effect to the contract as written.

Insurance Law > Liability & Performance Standards > Good Faith & Fair Dealing > Duty to Defend

Insurance Law > Claim, Contract & Practice Issues > Policy Interpretation > General Overview

Insurance Law > ... > Policy Interpretation > Ambiguous Terms > Unambiguous Terms

Insurance Law > ... > Commercial General Liability Insurance > Exclusions > General Overview

***HN4*** It is well-settled in New York that exclusions from insurance policy coverage are given strict constructions. An insurer seeking to avoid the duty to defend based upon a policy exclusion bears the heavy burden of demonstrating that there is no reasonable possibility of coverage under the policy. To meet this burden, the insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case.

Insurance Law > Claim, Contract & Practice Issues > Policy Interpretation > Plain Language

Insurance Law > ... > Policy Interpretation > Reasonable Expectations > General Overview

Insurance Law > ... > Policy Interpretation > Reasonable Expectations > Reasonable Person

*HN5* The tests to be applied in construing an insurance policy are common speech and the reasonable expectation and purpose of the ordinary business person.

Contracts Law > Contract Interpretation > General Overview

*HN6* A court should not adopt a construction of a contract which will operate to leave a provision of a contract without force and effect. An interpretation that gives effect to all the terms of an agreement is preferable to one that ignores terms or accords them an unreasonable interpretation.

Contracts Law > Contract Interpretation > Parol Evidence > General Overview

*HN7* When parties set down their agreement in a clear, complete document, their writing should be enforced according to its terms, and evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing.

**Counsel:** For Plaintiff: MICHAEL A. MIRANDA, ESQ., THURM & HELLER, New York, New York.

For Partners for Housing, Brender Hecht Associates, Inc., Defendants: DANIEL G. BLUMENSTEIN, ESQ., SCHWARTZ & BLUMENSTEIN, New York, New York.

**Judges:** FREDERIC BLOCK, United States District Judge.

**Opinion by:** FREDERIC BLOCK

# Opinion

## MEMORANDUM AND ORDER

**BLOCK, District Judge:**

Plaintiff U.S. Underwriters Insurance Company ("Underwriters") commenced this declaratory judgment action seeking a determination that it is not obligated to defend and indemnify its insured, defendant Partners For Housing ("Partners"), in a personal injury action that is currently pending in New York State Supreme Court, Bronx County ("the state court action"). Underwriters now moves for summary judgment pursuant to *Rule 56 of the Federal Rules of Civil Procedure*, claiming that there are no issues of fact and that it is entitled to declaratory judgment on this issue as a matter of law. Defendants Partners and Brender Hecht Associates, Inc. ("Brender Hecht") (collectively "the moving defendants") [*2] cross-move for summary judgment, seeking a determination that Underwriters is obligated as a matter of law to defend and indemnify Partners in the state court action. For the reasons that follow, the Court concludes that Underwriters is not obligated to defend and indemnify Partners because of exclusionary language contained in the general liability insurance policy that it issued to Partners. Accordingly, Underwriters' motion for summary judgment is granted, and the cross-motion for summary judgment is denied.

## BACKGROUND

Partners owned a vacant building located at 70 Patchen Avenue in Brooklyn ("the premises"). By contract dated June 18, 1992, Partners hired Brender Hecht as a general contractor to perform certain construction work at the premises. [1] [*4] At the same time as the contract was signed, both Brender Hecht and Partners obtained commercial general liability insurance policies covering the premises. At issue in this case is the policy obtained by Partners from

---

[1] Partners and Brender Hecht are closely affiliated companies. Sharon Brender is the sole owner of Brender Hecht, and is a 49 1/2 percent shareholder in Partners. Her husband Abraham Brender is a 49 1/2 percent shareholder in Partners. The remaining one percent of Partners' shares is held by a corporation in which Sharon and Abraham Brender have an ownership interest.

Underwriters. This policy, which had a limit of $ 1 million per occurrence and an effective date of June 19, 1992, [2] described the premises as a "vacant building," and defined "vacant" as "any real estate [building, [*3] house or land] which is *not* occupied by an insured, tenant, or other person, including any contractor or his employees." Affidavit of Hugh Seltner ("Seltner Aff."), at Exh. "A" (emphasis in original). The policy contained an endorsement entitled "Exclusion of Injury to Employees, Contractors and Employees of Contractors" ("Employee Injury Exclusion"), which provided, in pertinent part:

> This insurance does not apply to . . . bodily injury to any employee of any insured, to any contractor hired or retained by or for any insured or to any employee of such contractor, if such claim for bodily injury arises out of and in the course of his employment or retention of such contractor by or for any insured, for which any insured may become liable in any capacity . . . . This exclusion applies to all claims and suits by any person or organization for damages because of such bodily injury, including damages for care and loss of services.

Seltner Aff., at Exh. "A."

On August 14, 1992, Brender Hecht hired F.G.R., Inc. ("F.G.R.") as a subcontractor to plaster, perform rough carpentry work, and install insulation and drywall at the premises. The subcontract obligated F.G.R. to obtain liability insurance naming, *inter alia*, Brender Hecht as general contractor and Partners as owner of the premises. In August 1992, Hecktor Beckford ("Beckford"), an employee of F.G.R., was allegedly injured while working at the premises. On March 3, 1993, Beckford commenced the state court action against the City of New York, Partners, and Brender Hecht. Underwriters received written notice of the state court action from Partners. By letter dated December 16, 1992, Underwriters advised Partners that it was reserving its rights to deny coverage based upon, *inter alia*, the Employee Injury Exclusion. By letter dated March 16, 1993, Underwriters disclaimed coverage to Partners. This declaratory judgment action [*5] was commenced on September 17, 1993. The basis for federal jurisdiction is diversity of citizenship, as Underwriters is a Delaware corporation and the defendants are all New York residents.

## DISCUSSION

### I. Standard on a Motion for Summary Judgment

*HN1* A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*; *see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*. The burden is on the moving party to identify those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits that it believes demonstrates the absence of a genuine issue of material fact. *See Celotex Corp., supra, at 323*. All ambiguities must be resolved, and all inferences drawn, in favor of the nonmoving party. *See Repp v. Webber, 132 F.3d 882, 1997 U.S. App. LEXIS 36366, 1997 WL 793284*, at *8 (2d Cir. 1997). The judge's role in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine [*6] issue for trial." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*; *see also Beatie v. City of New York, 123 F.3d 707, 710-711 (2d Cir. 1997)*. Once the moving party has carried its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . The non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)* (quoting *Fed. R. Civ. P. 56(e)*) (emphasis in original) (other citations omitted).

### II. The Employee Injury Exclusion

Underwriters' principal argument is that it is not obligated to defend and indemnify Partners in the state court action because the Employee Injury Exclusion expressly disclaims any coverage for Beckford's accident. Preliminarily, because this is a diversity action, the Court applies the choice of law rules of the State of New York, the State in

---

[2] Although the effective date on the policy was June 19, 1992, it was not countersigned until August 21, 1992 and was not forwarded to Partners until October 1992.

which the Court sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 85 L. Ed. 1477, 61 S. Ct. 1020 (1941).* **HN2** Under New York [*7] law, questions regarding an insurer's duties in respect to events that occurred in New York are governed by New York law. *See U.S. Underwriters Ins. Co. v. Congregation B'nai Israel, 900 F. Supp. 641, 644 n.2 (E.D.N.Y. 1995).*

**HN3** Under New York law, courts interpreting insurance policies follow the general contract principle that "the initial interpretation of a contract 'is a matter for the court to decide.'" *K. Bell & Assocs., Inc. v. Lloyd's Underwriters, 97 F.3d 632, 637 (2d Cir. 1996)* (quoting *Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 299 (2d Cir. 1996)).* If the contract is ambiguous, it should be submitted to the trier of fact; however, "if the contract is capable of only one reasonable interpretation," the Court must give effect to the contract as written. *K. Bell & Assocs., 97 F.3d at 637.*

**HN4** It is well-settled in New York that "'exclusions from insurance policy coverage are given strict constructions.'" *State of New York v. Blank, 27 F.3d 783, 788 (2d Cir. 1994)* (quoting *Kimmins Indus. Serv. Corp. v. Reliance Ins. Co., 19 F.3d 78, 81 (2d Cir. 1994)).* An insurer seeking to avoid the duty to defend based upon a policy exclusion bears the heavy burden [*8] of demonstrating that "there is no reasonable possibility of coverage under the policy." *Blank, 27 F.3d at 789; see also Mount Vernon Fire Ins. Co. v. William Monier Constr. Co., 1996 U.S. Dist. LEXIS 11297, 1996 WL 447747,* at *3 (S.D.N.Y. Aug. 7, 1996); *Mount Vernon Fire Ins. Co. v. Chios Constr. Co., 1996 U.S. Dist. LEXIS 414, 1996 WL 15668,* at *1 (S.D.N.Y. Jan. 17, 1996). To meet this burden, the insurer must establish that "the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." *Continental Cas. Co. v. Rapid-American Corp., 80 N.Y.2d 640, 609 N.E.2d 506, 513, 593 N.Y.S.2d 966, 973 (1989).*

Partners and Brender Hecht contend that the Employee Injury Exclusion is not applicable here because Beckford was not the employee of a contractor "hired or retained by or for" Partners. Their arguments fall into two broad categories: first, that Brender Hecht, and not Partners, hired F.G.R.; and second, that F.G.R. was a *subcontractor* and not a contractor, and the exclusion by its own terms therefore does not apply. The Court will consider each of these arguments in turn.

In respect to the first argument, the Court observes that there is [*9] no question but that Brender Hecht, and not Partners, contracted with F.G.R. Underwriters argues that because F.G.R. was retained "for" Partners, the Employee Injury Exclusion is operative. **HN5** "'The tests to be applied in construing an insurance policy are common speech . . . and the reasonable expectation and purpose of the ordinary business [person.]'" *Blank, 27 F.3d at 792* (quoting *Ace Wire & Cable Co. v. Aetna Cas. & Sur. Co., 60 N.Y.2d 390, 398, 457 N.E.2d 761, 764, 469 N.Y.S.2d 655, 658 (1983));* *see also K. Bell & Assocs., 97 F.3d at 639* ("Under New York law, the plain meaning of a clause in an insurance contract is determined according to an objective standard . . ."). Using these rules as a guide, the Court concludes that the Employee Injury Exclusion clearly applies.

First, as a matter of common sense, and giving the words "hired and retained . . . for any insured" their plain and ordinary meaning, the Court concludes that Brender Hecht's retention of a subcontractor to perform work on real property owned by Partners necessarily was for the benefit of Partners and thus falls within the scope of the exclusionary language. The language of the Employee Injury Exclusion [*10] clearly contemplates that a contractor could be retained by a party other than the insured on the insured's behalf, and that an injury to that contractor or its employee would fall within the scope of the exclusion. The argument that the exclusion only applies if Partners actually hired or retained the contractor would render the language "for any insured" a nullity. It is a well settled principle of contract law that **HN6** a court should not adopt a construction of a contract "which will operate to leave a 'provision of a contract . . . without force and effect.' . . . An interpretation that gives effect to all the terms of an agreement is preferable to one that ignores terms or accords them an unreasonable interpretation." *Ruttenberg v. Davidge Data Sys. Corp., 215 A.D.2d 191, 196, 626 N.Y.S.2d 174, 177 (1st Dep't 1995)* (quoting *Laba v. Carey, 29 N.Y.2d 302, 308, 277 N.E.2d 641, 644, 327 N.Y.S.2d 613, 618 (1971))* (other citations omitted).

Moreover, Partners' current efforts to disassociate itself from the renovation of the premises are unpersuasive. The Court observes that Sharon Brender, the president of both Brender Hecht and Partners, signed the contract for

renovation of [*11] the premises on behalf of *both* corporations. The contract between Brender Hecht and Partners anticipates that Brender Hecht will retain subcontractors; indeed, it requires that any subcontractors be paid out of the sums forwarded by Partners to Brender Hecht for that purpose. Additionally, the contract between Brender Hecht and F.G.R. was made contingent upon Partners' approval of F.G.R., and further provided that Brender Hecht would pay F.G.R. "90% of [its] detailed statement *as approved by the Owner.*" Affirmation of Michael A. Miranda, at Exh. "D," section 7 (emphasis added).

In sum, in light of the clear language of the Employee Injury Exclusion, the close ties between Brender Hecht and Partners, and Partners' involvement in the oversight of the work performed at the premises, the Court concludes that F.G.R.'s employees fell within the scope of the Employee Injury Exclusion because, F.G.R., though retained "by" Brender Hecht, was retained "for" Partners.

The moving defendants' second argument, that the exclusionary language does not apply because F.G.R. was a subcontractor and not a contractor, is unpersuasive. Black's Law Dictionary defines "contractor" as "one who [*12] contracts to do work for another," and notes that contractors are generally classified as either general contractors or subcontractors. Black's Law Dictionary 326 (6th ed. 1990). The term "subcontractor" is defined as, *inter alia,* "one who takes [a] portion of a contract from [the] principal contractor or another subcontractor," or "one who has entered into a contract, express or implied, for the performance of an act with the person who has already contracted for its performance." *Id. at 1424.* Based upon the foregoing, it is clear that the term "contractor" is a generic one, encompassing both general contractors and subcontractors. The moving defendants have offered the Court no reason why it should read the word "contractor" as referring only to general contractors and not to subcontractors. Thus, in the absence of any contractual language or case authority in support of this argument, the Court rejects the narrow and constricted reading of the term "contractor" that is urged by the moving defendants.

The moving defendants also argue that a determination that the Employee Injury Exclusion applies would run contrary to Partners' intent in obtaining comprehensive general [*13] liability insurance from Underwriters in the first instance. They claim that one of Partners' purposes in obtaining the insurance was to insure against the risk that third parties would be injured on the premises during construction. The moving defendants point to a fax transmittal from Partners' broker to Underwriters, which indicates that Partners was seeking a comprehensive general liability policy, and that the contractor was set to begin work as soon as Partners procured insurance. Partners contends that its stated request for "comprehensive general liability" serves as evidence that it intended such coverage to apply to third parties who were injured on the premises. It is well settled, however, that "*HN7* when parties set down their agreement in a clear, complete document, their writing should be enforced according to its terms, and 'evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing.'" *Matter of Milonas v. Public Employment Relations Bd.,* 225 A.D.2d 57, 64, 648 N.Y.S.2d 779, 784 (3d Dep't 1996) (quoting *W.W.W. Assocs. v. Giancontieri,* 77 N.Y.2d 157, 162, 566 N.E.2d [*14] 639, 642, 565 N.Y.S.2d 440, 443 (1990)). Even if this were not the case, the fax transmittal letter contains absolutely no language that would support Partners' argument in this regard. In fact, the fax transmittal indicates that Brender Hecht would be obtaining its own insurance in the amount of $ 1 million, which policy would list Partners as an additional insured. This could conceivably serve as evidence that Partners intended that its Underwriters policy be limited in scope; indeed, Underwriters maintains that the relatively low premium that it charged Partners serves as proof that the policy was not intended to cover injuries sustained by subcontractors or their employees.

Finally, the moving defendants request that the Court redact the policy to delete the Employee Injury Exclusion based upon the fact that the policy was not countersigned until after the accident occurred. Such a redaction, they contend, would bring the policy into conformity with Partners' understanding at the time the policy was first obtained. This argument is wholly without merit. Underwriters does not contest that the policy became effective on the earlier date, despite the fact that it was not countersigned [*15] until after the accident. If the date of countersignature were somehow determinative, then the entire policy, and not merely the Employee Injury Exclusion, would fall. This is clearly not the result that the moving defendants seek.

In conclusion, the Court determines that Underwriters has met its burden of showing that the Employee Injury Exclusion "'is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in

the particular case.'" *Chios Constr. Corp., 1996 WL 15668*, at *3 (quoting *Continental Cas. Co., 80 N.Y.2d at 652, 593 N.Y.S.2d at 972*). Partners and Brender Hecht have utterly failed to satisfy their burden of demonstrating that they are entitled to judgment as a matter of law on their cross-motion, and have also failed to oppose Underwriters' motion with evidentiary facts sufficient to show that there is a genuine issue for trial. Accordingly, Underwriters' motion for summary judgment is granted and the cross-motion for summary judgment is denied.

**CONCLUSION**

For the foregoing reasons, Underwriters' motion for summary judgment is granted, and judgment shall be entered declaring that Underwriters is not obligated [*16] to defend or indemnify Partners in the action entitled *Hecktor Beckford and Eulalie Beckford v. City of New York, et al.*, pending in the Supreme Court of the State of New York, Bronx County, under Index Number 8612/93. The cross-motion for summary judgment filed by Partners and Brender Hecht is denied.

**SO ORDERED.**

Dated: Brooklyn, New York

January 20, 1998

FREDERIC BLOCK

United States District Judge